UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

PAUL DAVID FREEMAN,        )
                                   )
               Plaintiff,       )
                                   )
v.                                 )      Case No.  1:12CV86 SNLJ
                                   )
FRANKLIN ADAMS and        )
CITY OF SIKESTON, MISSOURI,    )
                                   )
             Defendants.    )

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Franklin Adams and City of

Sikeston's joint motion for summary judgment (ECF #72).  The motion is fully briefed

and is ready for disposition.  For the following reasons, the Court will grant the motion

for summary judgment.

## I.    Background

Plaintiff Paul David Freeman filed this 42 U.S.C. § 1983 and state law action

against defendants Sikeston Public Safety Officer Franklin Adams (Officer Adams) and

the City of Sikeston, Missouri (the City).  In his amended complaint plaintiff alleges that

the actions of defendants violated his constitutional rights when Officer Adams allegedly:

(1) stopped and frisked plaintiff on two occasions in July 2011 without probable cause;

(2) arrested plaintiff without probable cause on November 3, 2011; (3) used excessive

force in arresting plaintiff on November 3, 2011; (4) caused plaintiff's parole to be

revoked due to the unlawful arrest on November 3, 2011; and (5) falsely told individuals

in the community that plaintiff was a police informant.  Plaintiff further alleges that the City was deliberately indifferent to plaintiff's constitutional rights and failed to supervise and discipline Officer Adams resulting in his unconstitutional actions against plaintiff. Finally, plaintiff makes a state law defamation claim based on the allegation that Officer Adams told individuals that plaintiff was a police informant.

In their motion for summary judgment, defendants argue that Officer Adams is entitled to judgment as a matter of law because: (1) the two encounters between plaintiff and Officer Adams in July 2011 were consensual; (2) Officer Adams had probable cause to arrest plaintiff on November 3, 2011; (3) Officer Adams's use of his canine unit, Eros, to apprehend plaintiff during that arrest was objectively reasonable because plaintiff is a violent felon that Officer Adams was investigating for reportedly brandishing a weapon; (4) plaintiff has failed to produce sufficient admissible evidence to demonstrate a causal link between Officer Adams's conduct and the revocation of plaintiff's parole; and (5) Officer Adams did not tell anyone that plaintiff was a police informant and plaintiff has failed to produce any admissible evidence demonstrating otherwise.  Further, defendants argue that the City is entitled to judgment as a matter of law on plaintiff's constitutional claims because: (1) there was no underlying violation of plaintiff's constitutional rights; and (2) there is no *respondeat superior* liability or vicarious liability under 42 U.S.C. §1983 and plaintiff has failed to produce any admissible evidence that any such violation was the result of a policy, custom, or practice of the City.  As to plaintiff's failure to supervise and discipline claim, the City argues that it is entitled to judgment as a matter of law because plaintiff has failed to produce any admissible evidence that the City was

deliberately indifferent to prior similar unconstitutional acts of its officers.  Finally, the

City contends that plaintiff has not produced evidence to support his state law defamation

claim and, in any event, the claim is barred by sovereign immunity.

## II.  Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a

motion for summary judgment if all of the information before the court demonstrates that

"there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The

burden is on the moving party.  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op.

Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  After the moving party discharges this burden,

the nonmoving party must do more than show that there is some doubt as to the facts.

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A genuine issue of material fact is not the "mere existence of some alleged factual

dispute between the parties."  *State Auto. Ins. Co. v. Lawrence,* 358 F.3d 982, 985 (8th

Cir. 2004).  "Instead, the dispute must be outcome determinative under prevailing law."

*Mosley v. City of Northwoods,* 415 F.3d 908, 910–11 (8th Cir. 2005) (internal quotations

omitted).  A fact is material when it "might affect the outcome of the suit under the

governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The nonmoving party bears the burden of setting forth specific facts showing that

there is sufficient evidence in his favor to allow a jury to return a verdict for him.

*Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324.  "If 'opposing parties tell two

different stories,' the court must review the record, determine which facts are material

and genuinely disputed, and then view those facts in a light most favorable to the nonmoving party – as long as those facts are not 'so blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the nonmoving party and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). The court is required, however, to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

### III.    Plaintiff's request for continuance and objection to affidavit testimony

Before addressing the merits of the summary judgment motion, the Court will address two preliminary matters raised by plaintiff in his response to the motion. First, plaintiff maintains that he has not been able to obtain all of the evidence that he believes exists through discovery and requests a continuance for additional time to conduct discovery. Plaintiff did not file a separate motion, but instead, merely included this request in his memorandum of law in opposition to the motion. The governing rule is

Federal Rule of Civil Procedure 56(d), which allows the Court to defer considering the summary judgment motion or to deny it, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . . ." Fed.R.Civ.P. 56(d)(1).

"The Court has discretion to determine whether the parties have had adequate time for discovery." *Fischer v. Steward*, 4:07CV1798 ERW, 2008 WL 1766875, at *1 (E.D. Mo. April 14, 2008) (quoting *Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903, 910 (8th Cir. 1999). "If a party opposes summary judgment based on inadequate opportunity to conduct discovery, the party must make a showing 'that discovery has been inadequate.'" *Id.* (quoting *Robinson v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006)). "Mere speculation that the nonmoving party controls relevant facts is an insufficient basis for a Rule 56(d) continuance." *Kuehne v. Citimortage, Inc.*, 4:10CV1902 DDN, 2012 WL 1205754, at *5 (E.D. Mo. April 11, 2012).

In support of his request, plaintiff alleges that the defendants have not provided documents and other evidence during discovery that he believes exists and that he needs more time to obtain affidavits from his witnesses.[1] This matter has been pending since May 2012. The original discovery deadline was January 15, 2013, which was later extended to March 13, 2013. Plaintiff was also granted an extension of time for his response to this motion. As evidenced by plaintiff's response, he has submitted and defendants have responded to, numerous discovery requests. Included in the documents

---

[1] Plaintiff also argues that he cannot obtain affidavits of his witnesses from prison. Contrary to his position, plaintiff has submitted an affidavit and a declaration from two individuals in support of his claims.

filed by plaintiff in opposition to the motion are defendants' responses to a request for production, four requests for admissions, and two sets of interrogatories. Plaintiff filed a motion to compel with regard to discovery, which was taken up and ruled on by the Court. The motion to compel referenced four sets of interrogatories, including 76 interrogatories more than the 25 allowed by Federal Rule of Civil Procedure 33(a)(1), and objected to the sufficiency of defendants' 51 page response to the many requests for admissions. Is it apparent that plaintiff understands and utilized the discovery process in this matter and has had adequate time to conduct discovery. The Court will, therefore, deny plaintiff's request for a continuance.

Second, plaintiff filed objections to facts and opinions contained in the affidavit of Officer Adams that plaintiff claims are "extrinsic and immaterial."[2] Plaintiff objects to information related to the 911 call and Officer Adams's knowledge as to plaintiff's prior felony conviction for armed robbery in which he shot and seriously injured an individual.[3] This Court has reviewed the affidavit testimony of Officer Adams in light of the objections made by plaintiff – hearsay, not based on personal knowledge, assumes facts not in evidence or material to the issues, inadmissible opinion evidence, and unrelated evidence – and overrules the objections. The 911 call and plaintiff's prior violent felony conviction involving a weapon are relevant to the circumstances and issues

---

[2] The objections were filed as an attachment to plaintiff's response to the motion.

[3] Plaintiff objects to a number of other paragraphs contained in Officer Adams's affidavit. However, the information contained in those paragraphs was not included in defendants' motion for summary judgment or statement of facts. Plaintiff's objections to those paragraphs, therefore, are moot.

surrounding plaintiff's arrest on November 3, 2011.  Further, reasonable suspicion and probable cause may be based on hearsay information.  *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (citing *Illinois v. Gates*, 462 U.S. 213, 241-42 (1983)); *United States v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005) (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)).

## IV.    Facts

Officer Adams is employed by the City of Sikeston, Missouri and has worked in the Police Division of the Sikeston Department of Public Safety since 1999.  Officer Adams has had a Class B law enforcement license since 1999.  Officer Adams is currently a Canine Handler Officer and, in 2011, his canine unit was Eros.

### A.    Two Encounters in July 2011

The undisputed facts as to the two encounters in July 2011 have been submitted from plaintiff's deposition testimony.

#### 1.    The First Encounter in Early July

Plaintiff testified that the first encounter with Officer Adams was in early July. Plaintiff was not certain when it actually occurred.  Plaintiff was walking on the sidewalk and Officer Adams drove up to plaintiff in his patrol vehicle.  Officer Adams then stopped his patrol vehicle and asked plaintiff how he was doing.  Officer Adams did not request or order plaintiff to stop.

According to plaintiff, he and Officer Adams were just talking and Officer Adams exited his patrol vehicle while they were talking.  Officer Adams was in the street and plaintiff was on the sidewalk.  Plaintiff testified that Officer Adams was merely asking

him questions about where plaintiff was going and other similar questions.  Plaintiff walked over to Officer Adams in the street. Specifically, plaintiff testified, "I walked towards him [Officer Adams].  He didn't call me.  I walk towards him."  Plaintiff and Officer Adams talked some more in the street.

Plaintiff began to walk away from Officer Adams, then turned back toward Officer Adams and asked "[y]ou trying to see if I got something on me?"  Plaintiff then raised his shirt.  In response, Officer Adams asked plaintiff to come over to him and plaintiff did so.  Plaintiff threw his hands in the air, assumed the position, and stated to Officer Adams "Go on, man, I ain't got nothing."  Officer Adams placed his hands on plaintiff's chest, rubbed down plaintiff's rib cage, and brushed plaintiff's pocket area.  Officer Adams did not place plaintiff against his patrol vehicle or have plaintiff spread his legs.  Officer Adams did not push or grab plaintiff.  Plaintiff testified that it only took about a second and then he walked away.

### 2.     The Second Encounter in Late July

The second encounter with Officer Adams was in the third week of July.  Plaintiff was walking down a street and Officer Adams pulled his car into a nearby parking lot.  Plaintiff testified that Officer Adams always parked in that lot to observe the area. Officer Adams got out of his car and walked to the front of the car.  As plaintiff walked past Officer Adams, Officer Adams asked plaintiff if he had been drinking or using drugs (apparently with reference to plaintiff being on parole).  Officer Adams asked plaintiff to turn around, which he did and voluntarily raised his hands into the air.  Officer Adams, however, never asked plaintiff to put his hands in the air.  Plaintiff testified that Officer

Adams "pat me down" and that "[Officer Adams] notice [sic] I didn't have nothing . . . [and] I went on about my business." The interaction with Officer Adams on that occasion lasted less than 10 seconds. Plaintiff further testified that "[i]t was nothing."

## B. Allegation that Officer Adams called plaintiff a police informant

According to Officer Adams's affidavit testimony, he did not tell anyone that plaintiff was a police informant. Plaintiff admitted in his deposition that he has "never heard him [Officer Adams] call me anything." According to plaintiff, he heard from people in the community that Officer Adams was spreading the rumor that plaintiff was a police informant. Plaintiff submitted the declaration of Tony Davis stating that Davis heard from people in the community that plaintiff "was the one telling on people" and the affidavit of Timothy Draper who testified that an unidentified Sikeston police officer told Draper that plaintiff told the police where they could locate Draper.

## C. November 3, 2011 Arrest

The following facts are undisputed.[4] On November 3, 2011, at approximately 10:07 p.m., an individual called the Sikeston Department of Public Safety and reported that plaintiff was brandishing a weapon on the corner of Dixie Street and Osage Street. The call was communicated by the dispatcher to Officer Adams. Officer Adams responded to the area of Dixie Street and Osage Street to investigate the report of plaintiff brandishing a weapon in a public area. Officer Adams knew that plaintiff was on parole

---

[4] The undisputed facts are taken from facts that (1) plaintiff admitted were undisputed in his response or (2) plaintiff alleged were disputed but failed to properly and/or directly controvert. The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion with specific references to portions of the record as required by Local Rule 4.01(E) and Federal Rule of Civil Procedure 56(c)(1).

for shooting and seriously injuring an individual during an armed robbery. Officer Adams was driving a marked patrol vehicle with an emergency light bar on the roof and emblems and signage on both sides indicating that it was an official vehicle of the Sikeston Department of Public Safety, and reflective lettering on both sides and the back indicating that the patrol vehicle contained a canine unit.

Officer Adams located plaintiff in the 200 block of Luther Street. As Officer Adams drove toward plaintiff, plaintiff pointed at the vehicle from where he was standing on the sidewalk. Plaintiff then stepped out into the street and again pointed at the vehicle. As Officer Adams observed plaintiff standing in Luther Street, Officer Adams saw plaintiff extend his arm towards Officer Adams. Officer Adams testified that he was in apprehension of sustaining immediate serious injury because he Adams believed that plaintiff was pointing a gun at him.[5] As Officer Adams continued to drive his patrol vehicle towards plaintiff, plaintiff took off running.

Officer Adams pursued plaintiff in his marked patrol vehicle as plaintiff ran in the alley between Dixie Street and Luther Street. Officer Adams continued to pursue plaintiff as plaintiff ran back towards Luther Street through an empty lot. Plaintiff continued running and crossed over Luther Street. Officer Adams then observed plaintiff run into the backyard of one of the houses on the east side Luther Street.

---

[5] Officer Adams maintains that plaintiff was pointing a black object at him that he believed was a gun, but plaintiff claims that he was only pointing his finger.

Officer Adams parked his patrol vehicle on Luther Street facing east. Officer Adams exited his marked patrol vehicle and deployed Eros on his lead.[6] As Officer Adams and Eros proceeded into the north side of the backyard, plaintiff stood up from where he had been crouching by a bush.

At this point, the facts become disputed. According to defendants, plaintiff proceeded to run back towards Luther Street with Officer Adams, Eros, and Officer Zach Albright in pursuit. As Officer Adams and Eros were pursuing plaintiff, plaintiff had his right hand in his coat pocket. Plaintiff turned and looked back at Officer Adams with his right hand in his coat pocket. Based upon Officer Adams's training and experience as a law enforcement officer, plaintiff's movement in turning to look back at Officer Adams was consistent with the movement that an individual would use to pull a gun from a coat pocket to shoot at an individual who was pursuing him. As a result, Officer Adams was concerned that plaintiff was going to pull a gun from plaintiff's coat pocket and begin shooting at him. Accordingly, Officer Adams yelled out, "Stop police or I will release the dog." Plaintiff did not stop, however, and continued running south on Luther Street with his right hand in his coat pocket.

Officer Adams released Eros from the lead and gave him the command to apprehend plaintiff. Eros apprehended plaintiff by knocking him to the ground. Plaintiff began using his left hand to strike Eros in his head and body. Officer Adams ordered plaintiff to stop fighting the dog and to lie still. Plaintiff continued to fight Eros. Officer

---

[6] A "lead" is the term used by canine handlers for a leash.

Albright then ordered plaintiff to stop fighting the dog and plaintiff finally complied with Officer Albright's order. Once plaintiff complied with Officer Albright's order, Officer Adams immediately gave Eros the command to release and Eros immediately released plaintiff. Eros then walked towards Officer Adams and Officer Albright handcuffed plaintiff.

Officer Adams made contact with plaintiff in the holding facility at the Sikeston Department of Public Safety to determine if plaintiff had any injuries. Officer Adams observed that plaintiff had a scratch on the inside of his left wrist and a scratch on the outside of his left wrist. Officer Adams took a photograph of each of those two scratches.

According to plaintiff,[7] he was "fleeing for his life" from an unidentifiable vehicle that was driving the wrong way down a one-way street at a high rate of speed. He crouched down beside a bush to collect his bearings and take cover from whoever was chasing him. Moments later he heard sirens, saw people moving with flashlights, and then heard someone yell "he is over here somewhere." He immediately stood up and stated: "Here I am. What you all want with me." Officer Adams yelled for him to come out. Plaintiff complied and Officer Albright gestured for plaintiff to come to him. As plaintiff walked toward Officer Albright with his hands raised above his head, he heard a "verocious [sic] bark and scraping of claws" to his right. He looked to his right and saw Officer Adams 2-3 feet from him release and command Eros to attack. Instinctively, plaintiff raised his left arm as Eros jumped toward plaintiff's chest and face area biting

_____

[7] Plaintiff alleges a plethora of facts that are not relevant to any of the issues before this Court on this motion. The Court has reviewed all of the facts alleged by plaintiff but only those that are relevant to the legal issues to be determined by this motion are set forth.

into plaintiff's left wrist and knocking him to the pavement on his back. Plaintiff pleaded with the officers to recall Eros as the dog "jerked and bite up and down [plaintiff's] left wrist and arm." The officers repeatedly yelled at him to roll over but he yelled back that he could not move without the dog biting his face and throat. Officer Adams gave Eros another command as Eros released plaintiff's wrist and moved toward plaintiff's coat collar and neck area. As Eros was preparing for another attack, bystanders yelled in protest, and Officer Albright again yelled at plaintiff to roll over and plaintiff complied. Plaintiff was then handcuffed and transported by Officer Mario Whitney to Sikeston City Jail. Plaintiff was arrested on charges of assault of a law enforcement officer and resisting arrest.

## V. Discussion

Plaintiff has brought this § 1983 action asserting that Officer Adams and the City violated his constitutional rights based on allegations of unlawful stop and frisk, unlawful arrest, use of excessive force, unlawful revocation of parole, and being labeled a police informant. Section 1983 provides a cause of action for a person who is injured as a result of being deprived of "any rights, privileges, or immunities secured by the Constitution" by a person acting under "color of state law. 42 U.S.C. § 1983. Defendants contend that they are entitled to summary judgment because the undisputed facts establish that there was no violation of plaintiff's constitutional rights and plaintiff's claims are barred by qualified immunity.

"Qualified immunity shields public officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley,* 574 F.3d 491, 495 (8th Cir. 2009). When the defense of qualified immunity has been asserted, the Court evaluates (1) whether defendants violated plaintiff's constitutional rights and (2) whether those rights were clearly established. *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011). If no constitutional violation occurred, the evaluation ends there. *See Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003). "Without the requisite showing of a constitutional violation, summary judgment is proper because [plaintiff] has failed to establish the existence of an essential element of [his] case." *Id.* Thus, the Court need not reach the question of qualified immunity. *Id.*

Plaintiff has also made a state law claim for defamation. Defendants argue that they are entitled to summary judgment on plaintiff's state law claim because plaintiff has not offered any admissible evidence in support of that claim and they are entitled to official immunity on that claim.

## A. Claims against Officer Adams

Specifically, plaintiff asserts violations of his constitutional rights and state law claims against Officer Adams based on allegations that Officer Adams: (1) stopped and frisked plaintiff on two occasions in July 2011 without probable cause; (2) arrested plaintiff without probable cause on November 3, 2011; (3) used excessive force in arresting plaintiff on November 3, 2011; (4) caused plaintiff's parole to be revoked due to

the unlawful arrest on November 3, 2011; and (5) falsely told individuals in the community that plaintiff was a police informant.

## 1. Two encounters in July 2011

Plaintiff alleges that he was stopped and frisked by Officer Adams without probable cause on two occasions in July 2011 as part of ongoing unlawful activity directed at plaintiff by Officer Adams. Plaintiff's deposition testimony, however, makes it clear that there was not a seizure on either occasion but instead two consensual encounters. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton,* 536 U.S. 194, 200 (2002). "[M]ere police questioning does not constitute a seizure." *Florida v. Bostick,* 501 U.S. 429, 434, (1991) (quoting *California v. Hodari D.,* 499 U.S. 621, 628 (1991)). "A Fourth Amendment 'seizure' does not occur merely because a police officer requests permission to search[.]" *United States v. Jones,* 269 F.3d 919, 925 (8th Cir. 2001); *United States v. Woods,* 213 F.3d 1021, 1023 (8th Cir. 2000). As a result, such encounters do not require any degree of suspicion. *Florida v. Bostick,* 501 U.S. 429, 435 (1991); *Florida v. Rodriguez,* 469 U.S. 1, 5-6 (1984). The determination of whether a seizure occurred is a question of law. *United States v. Delaney*, 52 F.3d 182, 186 (8th Cir. 1995).

"A consensual encounter does not implicate the Fourth Amendment." *United States v. Bledsoe*, 4:07CV591 CAS (MLM), 2010 WL 2835653, at *3 (E.D. Mo. June 25, 2010). Further, a consensual search is constitutionally permissible. *United States v.*

*Martin,* 982 F.2d 1236, 1238-39 (8th Cir. 1993). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Bostick,* 501 U.S. at 434. "A consensual encounter becomes a seizure implicating the Fourth Amendment when, considering the totality of the circumstances, the questioning is 'so intimidating, threatening, or coercive that a reasonable person would not have believed himself free to leave.'" *Bledsoe*, 2010 WL 2835653, at *3 (quoting *United States v. Hancock*, 103 F.3d 715, 718 (8th Cir. 1997)).

### a) First encounter in July 2011

Plaintiff's deposition testimony demonstrates the consensual nature of the first interaction in July between plaintiff and Officer Adams. They were simply talking to one another, and plaintiff's claim that Officer Adams asked him some general questions about where he was going does not constitute a seizure under the Fourth Amendment. Plaintiff even testified that he was walking away when plaintiff decided on his own volition to turn around and continue to engage Officer Adams in further conversation. It was plaintiff's decision to lift his shirt as if to invite Officer Adams to check to see if plaintiff was in possession of any illegal items. Officer Adams merely requested that plaintiff walk over to him and plaintiff voluntarily complied. Plaintiff does not claim that Officer Adams used any degree of force or show of authority in asking plaintiff to walk over to him. Accordingly, a reasonable person would have felt free to decline Officer Adams request to walk towards him and felt free to walk away. The consensual nature of this interaction is further demonstrated by the fact that plaintiff voluntarily put his hands in

the air and told Officer Adams to go ahead and search him because he did not have anything. The interaction between plaintiff and Officer Adams and the circumstances surrounding this occurrence demonstrate that plaintiff not only consented to the very brief inspection by Officer Adams, but plaintiff invited Officer Adams to perform the inspection. As a result, the entire interaction between plaintiff and Officer Adams was consensual and, therefore, it did not constitute a seizure under the Fourth Amendment. Accordingly, Officer Adams is entitled to summary judgment on plaintiff's claim relating to this encounter.

**b)      Second encounter in July 2011**

The second interaction between plaintiff and Officer Adams in July was also consensual. According to plaintiff, Officer Adams was parked in a parking lot that Officer Adams frequently parked in to observe the area, and there is no evidence that Officer Adams was there to specifically locate plaintiff. In fact, it was plaintiff that walked of his own accord to where Officer Adams was parked. Although Officer Adams asked plaintiff several questions as plaintiff walked up to him, that does not constitute a seizure under the Fourth Amendment. While they were talking, Officer Adams asked plaintiff to turn around. Plaintiff, however, does not claim that Officer Adams used any degree of force or show of authority in asking plaintiff to turn around. A reasonable person would have felt free to decline the request to turn around and felt free to walk away. Plaintiff, however, not only agreed to turn around, but even voluntarily raised his hands as if to indicate his consent to allow Officer Adams to briefly check for illegal items. As with the first interaction, plaintiff's actions and the circumstances surrounding

this second interaction demonstrate that it was consensual. Accordingly, it did not constitute a seizure under the Fourth Amendment and Officer Adams is entitled to summary judgment on plaintiff's claim arising out of this encounter.

### 2. Arrest on November 13, 2011

#### a) Probable cause to arrest

Plaintiff alleges that he was arrested by Officer Adams on November 3, 2011 without a warrant and without probable cause.[8] Plaintiff's arguments are based on his contentions that he believes Officer Adams used the 911 call to manufacture probable cause against him, that plaintiff was not committing any crime(s) on November 13, 2011, that plaintiff was not guilty of the crimes for which he was arrested, and that ultimately the prosecutor dismissed the charges. Plaintiff's arguments completely disregard the proper standard to be applied to determine whether Officer Adams had probable cause to arrest plaintiff.

If a "seizure" occurs by a law enforcement officer pursuant to the Fourth Amendment, the claim "should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."

---

[8] With regard to the circumstances surrounding his arrest, plaintiff also alleges that Officer Adams violated the City's General Orders by (1) driving at a high rate of speed the wrong way down a one-way street with only his "highbeams" on and (2) failure to engage (or purposefully disengaging) the mobile video and audio recording (MVR) equipment in his vehicle. Plaintiff argues Officer Adams violated the General Order that MVR equipment will automatically activate when the vehicle emergency warning devices are in operation. However, according to plaintiff's own testimony, Officer Adams did not have his emergency lights or sirens on. In any event, these allegations do not constitute violations of any constitutional right and are irrelevant to plaintiff's other claims.

*Graham v. Connor,* 490 U.S. 386, 395 (1989). Under the present facts, there was an initial "attempted seizure" for the purposes of the Fourth Amendment when Officer Adams attempted to stop plaintiff to investigate the report that plaintiff was brandishing a weapon.

A law enforcement officer may initiate a brief investigatory stop if the officer has reasonable suspicion to believe that "criminal activity may be afoot." *Terry v. Ohio,* 392 U.S. 1, 30 (1968). In deciding whether an officer had reasonable suspicion, the court views the totality of the circumstances to determine whether the officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417–418 (1981). In connection with reasonable suspicion, what the officer considers is not only the "specific and articulable facts" but also "rational inferences from those facts," which taken together "reasonably warrant the intrusion." *Terry,* 392 U.S. at 21. Considerable deference is afforded to the observations and conclusions of law enforcement officers, reasoning that an experienced officer can infer criminal activity from conduct that may seem innocuous to a lay observer. *United States v. Arizona,* 234 U.S. 266, 277 (2002); *United States v. Lopez– Mendoza,* 601 F.3d 861, 865–66 (8th Cir. 2010).

The information Officer Adams received from the dispatcher of the 911 call reporting that plaintiff was brandishing a weapon on a public street corner was sufficient for Officer Adams to lawfully stop plaintiff to investigate that report. Accordingly, Officer Adams was justified in performing an investigatory stop of plaintiff to confirm or

dispel the report that plaintiff was brandishing a weapon. The issue, thereafter, is whether probable cause developed to arrest plaintiff.

Whether the police had probable cause at the time of an arrest is a question of law for a court to decide. *Fisher v. Wal-mart Stores, Inc.,* 619 F.3d 811, 816 (8th Cir. 2010); *see also Kurtz v. City of Shrewsbury,* 245 F.3d 753, 758 (8th Cir. 2001) ("a false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest"). "Probable cause exists if 'the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense' at the time of the arrest." *Smithson v. Aldrich,* 235 F.3d 1058, 1062 (8th Cir. 2000) (quoting *Hannah v. City of Overland, Mo,* 795 F.2d 1385, 1389 (8th Cir. 1986)). "[T]he probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Id.* "Probable cause is to be assessed in terms of the circumstances confronting a reasonably cautious police officer at the time of the arrest, and the arresting officer is entitled to consider the circumstances, including arguably innocent conduct, in light of his training and experience." *Hannah*, 795 F.2d at 1389 (quoting *United States v. Wallraff*, 705 F.2d 980, 990 (8th Cir. 1983)).

It is undisputed that plaintiff fled as Officer Adams drove his marked patrol vehicle towards plaintiff in an attempt to stop plaintiff to investigate the report that plaintiff was brandishing a weapon. Although plaintiff contends the vehicle was unidentifiable, it is undisputed that Officer Adams was, in fact, driving a marked patrol vehicle with an emergency light bar on the roof and emblems and signage on both sides indicating that it was an official vehicle of the Sikeston Department of Public Safety, and

reflective lettering on both sides and the back indicating that the patrol vehicle contained a canine unit.  Accordingly, a reasonable police officer would believe that plaintiff was resisting a lawful investigatory stop by fleeing in violation of section 575.150 RSMo.  Section 575.150 RSMo states that "[a] person commits the crime of resisting or interfering with arrest, detention, or stop if . . . the person . . . [r]esists the arrest, stop or detention . . . by fleeing from such officer."  As a result, Officer Adams had probable cause to arrest plaintiff for resisting a lawful investigatory stop by fleeing in violation of section 575.150 RSMo.

Plaintiff argues that his constitutional rights were violated because there was no probable cause to arrest him on charges of assault on a law enforcement officer by pointing a gun at Officer Adams, assault on a law enforcement by striking Eros, or resisting arrest.  According to plaintiff, he did not point a gun at Officer Adams, he did not strike Eros, and he did not resist a lawful investigatory stop or arrest because he did not know the car he was running from was law enforcement.  An officer may effect a warrantless arrest, even if there is no lawful basis for the actual charges brought, as long as there is probable cause to believe some criminal offense had been committed. *McCabe v. Parker, et al.,* 608 F.3d 1068, 1077–78 (8th Cir. 2010).  Because this Court has found that Officer Adams had probable cause to arrest plaintiff for resisting a lawful investigatory stop by fleeing in violation of section 575.150 RSMo., it is unnecessary to determine whether there was probable cause for arrest on the other charges.  For the reasons set forth above, Officer Adams did not violate plaintiff's constitutional rights

when he arrested him on November 3, 2011. Officer Adams is, therefore, entitled to summary judgment on this claim.

### b) Excessive force claim

Plaintiff alleges that Officer Adams used excessive force to arrest plaintiff on November 3, 2011 by using his canine, Eros, to apprehend plaintiff in violation of his constitutional rights as provided by the Fourth, Eighth, and Fourteenth Amendments. The Supreme Court has held that an excessive force claim that arises in the context of an arrest "should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395. "Moreover, the less protective Eighth Amendment standard applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'" *Id.* (quoting *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40 (1977)). Further, the Eighth Circuit has held that "review of excessive force claims involving police dogs is properly governed by the general [reasonableness] standard established in *Graham*." *Kuha v. City of Minnetonka,* 365 F.3d 590, 598 (8th Cir. 2003), *abrogated on other grounds by Szabla v. City of Brooklyn Park,* 486 F.3d 385 (8th Cir. 2007) (*en banc*).

The right to be free from excessive force in the course of an arrest by law enforcement officials is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizure of the person. *Graham,* 490 U.S. at 395; *Mann v. Yarnell,* 497 F.3d 822, 825 (8th Cir. 2007). "The force employed by an officer is not excessive, and thus not violative of the Fourth Amendment, if it was objectively

reasonable under the particular circumstances." *Cook v. City of Bella Villa*, 582 F.3d 840, 849 (8th Cir. 2009). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the 'nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." *Id.* (quoting *Graham,* 490 U.S. at 396). "This reasonableness analysis requires us to evaluate the totality of the circumstances, including the severity of the crime, the danger the suspect poses to the officer or others, and whether the suspect is actively resisting arrest or attempting to flee. *Id.* "It is clear 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Cook,* 582 F.3d at 849 (quoting *Graham*, 490 U.S. at 396). The Court will evaluate the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.*

"The dispositive question is whether the officer's conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer at the scene at the time the force was applied. *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011). "A plaintiff's subjective motivation(s) for resisting arrest is immaterial since the reasonableness of the force is grounded in the perspective of a reasonable officer at the scene." *Womack v. Brown*, 4:11cv1487 SNLJ, 2012 WL 5948922, at 11 (E.D. Mo. Nov. 28, 2012) (citing *Carpenter v. Gage*, 686 F.3d 644, 650

(8th Cir. 2012) ("[e]ven if [plaintiff's] motive for his actions were 'innocent' in nature, the defendant deputies on the scene reasonably could have interpreted the plaintiff's actions as resistance").  "Further, an act taken based upon a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment."  *Id.*

Viewing the record before the Court and drawing all reasonable inferences in the light most favorable to plaintiff, while simultaneously viewing the facts from the perspective of a reasonable law enforcement officer on the scene, the Court finds that Officer Adams's use of Eros to apprehend plaintiff was objectively reasonable.  The *Graham* factors weigh heavily in favor of Officer Adams.  Officer Adams knew that plaintiff was a violent felon that had previously shot and seriously injured an individual during an armed robbery.  He was investigating a report that plaintiff was brandishing a weapon on a public street corner.  It was, therefore, reasonable for Officer Adams to believe that plaintiff was in possession of a weapon.  Once Officer Adams located plaintiff, plaintiff fled the scene and a reasonable officer would believe that plaintiff was actively resisting a lawful investigatory detention by fleeing.  It was then reasonable for Officer Adams to conclude that plaintiff posed an immediate and grave threat of serious injury or death to law enforcement officers and the general public.  Based upon the totality of the circumstances, the force employed by Officer Adams by the use of Eros to apprehend plaintiff was not excessive and thus, not violative of the Fourth Amendment.

Plaintiff's affidavit testimony that he essentially surrendered just prior to being apprehended by Eros did nothing to alleviate Officer Adams reasonable belief that plaintiff was in possession of a weapon and posed an immediate and grave threat to law

enforcement officers and the public. Moreover, plaintiff's "surrender" did not necessarily appear as a surrender to the officers on the scene. A reasonable officer could believe that the use of the canine was necessary to apprehend and control plaintiff under the circumstances known to the officers at that time. Accordingly, Officer Adams is entitled to summary judgment on plaintiff's excessive force claim.

### 3. Unlawful parole revocation claim

Plaintiff alleges his parole was unlawfully revoked as a result of unlawful conduct by Officer Adams. Specifically, plaintiff contends that the November 13, 2011 arrest, which he claims was made without probable cause, was the reason for his parole revocation. Because a judgment in plaintiff's favor would "necessarily imply the invalidity" of his revocation proceeding and because the revocation itself has not been reversed, expunged, invalidated or called into question by either an executive order or a state or federal tribunal, a § 1983 action is not cognizable at this juncture. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

In any event, plaintiff has not produced admissible evidence proving a causal link between any unlawful conduct by Officer Adams and the revocation of plaintiff's parole. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). In support of his claim, plaintiff offers a copy of a field violation report. The field violation report is not authenticated. Further, the field violation report is not proof of the reason that the state court revoked plaintiff's parole. However, the field violation report, if it were considered by this Court, does not support plaintiff's claim. The report shows that

plaintiff also had an arrest on November 17, 2011 for receiving stolen property and a felony controlled substance charge. According to the report, plaintiff was in possession of 1.2 grams of cocaine. Additionally, the report states that when plaintiff was directed to submit a urine sample for drug analysis on November 18, 2011, plaintiff admitted to "using cocaine multiple times a week for the last three weeks." Plaintiff has not offered proof of an unlawful and unconstitutional revocation of his probation as a direct result of any unlawful or unconstitutional act by Officer Adams. As a result, Officer Adams is entitled to summary judgment on this claim.

### 4. Defamation claim under § 1983

Plaintiff's contention that Officer Adams falsely labeled him as a police informant is not actionable under § 1983. *Miner v. Brackney*, 719 F.2d 954, 955 (8th Cir. 1983). "Damages for defamation are not recoverable under § 1983 because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States." *Ellinburg v. Lucas*, 518 F.2d 1196 (8th Cir. 1975).

Moreover, even if such a claim was actionable under § 1983, plaintiff has not produced any evidence to support his allegations. According to plaintiff, he heard from people in the community that Officer Adams was spreading the rumor that plaintiff was a police informant. Such testimony by plaintiff is inadmissible hearsay and does not support his claim. Plaintiff also submitted testimony from two alleged witnesses but neither testified that they heard Officer Adams name plaintiff as a police informant. One alleged witness stated that he heard from people in the community that plaintiff "was the

one telling on people."  Another alleged witness testified that an unidentified Sikeston police officer told him that plaintiff was the one who told the police where they could locate him with regard to an arrest warrant.  Officer Adams is entitled to summary judgment on this claim.

### 5.  State law claim(s)

It is clear from plaintiff's amended complaint and his response to the motion that he intends to make a state law claim for defamation.  It is less clear as to whether plaintiff intends to make state law claims for false arrest and wrongful imprisonment or if those terms are used by plaintiff merely in reference to the arrest on November 3, 2011 that plaintiff claims was unlawful.  Regardless, Officer Adams argues that he is entitled to official immunity on the state law claim(s) and, moreover, that the state law claim(s) fail as a matter of law.

Official immunity protects public officials from liability for injuries arising out of their discretionary acts or omissions performed in the exercise of their official duties. *Wilson v. City of Hazelwood, Mo.*, 530 F.Supp.2d 1059, 1068 (E.D. Mo. October 22, 2007); *Davis v. Lambert-St. Louis Intern. Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006). Law enforcement officers are public officials within the meaning of the official immunity doctrine. *Id.*  In this case, Officer Adams was a law enforcement officer with the Sikeston Department of Public Safety and held a Class B law enforcement license. As a result, he was a public official entitled to official immunity for his discretionary acts. "Official immunity, however, does not apply to discretionary acts done in bad faith or with malice."  *Wilson*, 530 F.Supp.2d at 1068.

For his defamation claim, plaintiff alleges that Officer Adams falsely labeled plaintiff as a police informant in plaintiff's community by spreading a rumor that plaintiff was an informant in a state and federal investigation that resulted in a drug raid that lead to the arrest of more than 63 people. To prevail under Missouri defamation law, a plaintiff must establish the following: 1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation. *Gray v. AT&T Corp.*, 357 F.3d 763, 765 (8th Cir. 2004) (citing *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. banc 2000)). "[A] person publishes a defamatory statement by communicating the defamatory matter to a third person. *Id.* at 765-66 (citing *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996)). As previously discussed, plaintiff has not provided any evidence in support of his claim that Officer Adams told individuals in the community that plaintiff was a police informant. Accordingly, even if official immunity were not applicable to this claim, the claim fails as a matter of law. Therefore, Officer Adams is entitled to summary judgment on plaintiff's state law defamation claim.

In the event that plaintiff intends to make state law claims for false arrest and wrongful imprisonment, the Court will address those issues. Plaintiff alleges that he was subject to false arrest by Officer Adams on November 3, 2011 and a subsequent wrongful imprisonment for nine days until he posted bond. "A false arrest occurs when there is a confinement without legal justification." *Kurtz*, 245 F.3d at 757. "The unlawfulness of the restraint is a key element in a cause of action for false arrest." *Id.* "A police officer who has probable cause to believe that a suspect has committed a crime is not liable for

the state law tort of false arrest simply because the suspect is later proven innocent or the charges are dismissed." *Id.* "Wrongful imprisonment, like false arrest, involves confinement without legal justification." *Wilson*, 530 F.Supp.2d at 1068 (internal citations and quotation omitted).

To prevail under Missouri law on a claim for false arrest or false (wrongful) imprisonment, a plaintiff must show that the defendant confined the plaintiff without legal justification. *Highfill v. Hale,* 186 S.W.3d 277, 280 (Mo.2006) (en banc). A defendant "confines" a person for purposes of false arrest or false imprisonment "if he encourages, causes, promotes, or instigates the arrest." *Id.* An arrest that is supported by probable cause is justified *per se* under Missouri law and cannot form the basis of a false arrest or false imprisonment claim. *Zike v. Advance America, Cash Advance Centers of Missouri, Inc.*, 646 F.3d 504, 512 (8th Cir. 2011) (citing *Fisher v. Wal–Mart Stores, Inc.,* 619 F.3d 811, 820 (8th Cir. 2010)).

Officer Adams's conduct in arresting plaintiff was a discretionary act for which official immunity applies. *Wilson*, 530 F.Supp.2d at 1068. Moreover, this Court has found, as a matter of law, that Officer Adams had probable cause to arrest plaintiff on November 3, 2011. The arrest, therefore, was justified *per se* and any false arrest or wrongful imprisonment claim by plaintiff on this basis fails as a matter of law. As a result, Officer Adams is entitled to summary judgment on a state law claim by plaintiff for false arrest and wrongful imprisonment.

To the extent that plaintiff's amended complaint alleges these state law claims against the City, the City is also entitled to summary judgment on those claims for the foregoing reasons.

### 6) Official capacity claims

Plaintiff alleges claims against Officer Adams in his official capacity. Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). To state a claim against a municipality or a government official in his or her official capacity, plaintiff must allege that a policy or custom of the government entity is responsible for the alleged constitutional violation. *Monell v. Dep't of Social Services,* 436 U.S. 658, 690–91 (1978). Because this Court has found that no constitutional violations occurred, Officer Adams is entitled to summary judgment on all of plaintiff's claims against him in his official capacity as well as his individual capacity.

### B. Claims against the City of Sikeston

Plaintiff asserts claims against the City for violation of his constitutional rights and failure to supervise and discipline Officer Adams. In *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658 (1978), the Supreme Court held that "the language of § 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under

§ 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). Instead, liability under § 1983 for a governmental entity must be based upon an official custom, policy, or practice of the city that causes the constitutional deprivation, *Monell,* 436 U.S. at 690-94, "or is so pervasive among non policymaking employees of the municipality so as to constitute a custom or usage with the force of law." *Granda v. City of St. Louis*, 472 F.3d 565, 568 (8th Cir. 2007). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

Where a plaintiff fails to identify any official policy that arguably played a role in the plaintiff's injuries, the unconstitutional policy claim must fail. *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1998). To determine whether a plaintiff has presented sufficient evidence of a municipal custom or practice, plaintiff must demonstrate:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) The plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.,* proof that the custom was the moving force behind the constitutional violation.

*Id.* Evidence "of a single incident of unconstitutional activity is not sufficient to impose liability." *Mann v. Yarnell,* 497 F.3d 822, 828 (8th Cir. 2007). Rather, the practice must

be "permanent and well-settled." *Davison v. City of Minneapolis, Minn.,* 490 F.3d 748, 659 (8th Cir. 2007).

Plaintiff has not offered any evidence that any alleged constitutional violations were the direct result of a policy, custom, or practice of the City. Instead, plaintiff offers only self-serving, conclusory, vague statements that the City was aware of longstanding, widespread, lawless misconduct by Officer Adams and other officers, that others have alleged constitutional violations against the City, and indifference to and tacit authorization of unlawful use of the canine, unlawful arrests, and manufactured probable cause. Plaintiff makes these general allegations without offering any support other than the facts he alleges with regard to his encounters with Officer Adams in July 2011 and his arrest on November 3, 2011. Plaintiff fails to demonstrate that action pursuant to official municipal policy, custom, or practice of some nature caused a constitutional tort. *Monell*, 436 U.S. at 691. The City, therefore, is entitled to summary judgment on this claim.

Furthermore, plaintiff's claim for municipal liability based on the City's alleged failure to supervise and discipline Officer Adams fails. A claim for failure to supervise requires proof that the municipality "received notice of a pattern of unconstitutional acts committed by its employees." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216-17 (8th Cir. 2013). Plaintiff has not presented any evidence that the City had reason to believe that its supervision of Officer Adams was inadequate. Moreover, the Eighth Circuit "has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Moore v. City of Desloge, Mo.,* 647 F.3d 841, 849 (8th Cir. 2011). "Similarly, to

maintain an action for training or supervisory liability, a plaintiff must show the failure to train or supervise caused the injury." *Id.* This Court has determined that Officer Adams did not violate plaintiff's constitutional rights. In light of this finding, the City cannot be found liable on plaintiff's claim that it failed to supervise and discipline Officer Adams. As a result, the City is entitled to summary judgment on this claim.

### C. Fourteenth Amendment

It is unclear from plaintiff's amended complaint and his pleadings in connection with the summary judgment motion as to whether he is also pursuing an independent Fourteenth Amendment due process claim. Plaintiff's unlawful stop, unlawful arrest, and excessive force claims are all analyzed under the Fourth Amendment; and as found by this Court, the defendants are entitled to summary judgment on all claims. Since these Fourth Amendment claims are analyzed under an objective reasonableness standard, a substantive due process claim cannot be based upon the allegations supporting the plaintiff's unlawful stop, unlawful arrest, and excessive force claims. *Smithson v. Aldrich*, 235 F.3d 1058, 1064 (8th Cir. 2000). Further, plaintiff has failed to plead specific facts to support a substantive due process claim. Therefore, to the extent that plaintiff's amended complaint includes vague allegations of the deprivation of due process, summary judgment is granted to the defendants.

## VI. Conclusion

In sum, this Court finds that the defendants have shown that they are entitled to summary judgment as to all of plaintiff's § 1983 and state law claims against them.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's request for additional time to conduct discovery is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's objections to the Affidavit of Officer Adams are **OVERRULED**.

**IT IS FINALLY ORDERED** that defendants Franklin Adams and City of Sikeston's joint motion for summary judgment (ECF #72) is **GRANTED**.  A separate Judgment in favor of defendants will accompany this Memorandum and Order.

Dated this 19th day of March, 2014.

STEPHEN N.  LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE